**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

_____

)
MATTHEW MEDDER, *et al.*,                                )
                                                          )
                                    Plaintiffs,          )          No. 21-2325
                                                          )
                          v.                              )          Filed: July 17, 2023
                                                          )
THE UNITED STATES,                                       )
                                                          )
                                    Defendant.           )
_____)

## OPINION AND ORDER

Plaintiffs Matthew Medder, Shonda Burrow, and Michele Edwards ("Plaintiffs") allege they were exposed to toxic chemicals and asbestos while working as federal employees at the Goodfellow Federal Complex in St. Louis, Missouri. As a result of such exposure, they assert entitlement to hazardous duty pay, environmental differential pay, and overtime pay on behalf of themselves and all similarly situated individuals. Before the Court is the Government's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). The Government contends that Plaintiffs fail to state a claim for relief and, in any event, the Court lacks jurisdiction over any of Plaintiffs' claims that fall outside the relevant statutes of limitations.

For the reasons discussed below, the Court concludes that Plaintiffs have in part stated a claim for relief based on alleged exposure to asbestos and that partial dismissal of Plaintiffs' claims based on the statutes of limitations is premature. Accordingly, the Court **GRANTS in part and DENIES in part** the Government's Motion. Additionally, the Court **DENIES** Plaintiffs' request to toll the limitations period for potential collective action opt-in plaintiffs during the pendency of the Government's Motion.

## BACKGROUND

### I.      Factual Background

Plaintiffs are current and former federal employees who worked at the Goodfellow Federal Complex in St. Louis, Missouri, within six years of the filing of the Amended Complaint.  Pls.' Am. Compl. ¶¶ 2, 20–21, ECF No. 8.  The Goodfellow Complex consists of 23 buildings on a 62.5-acre campus.  *Id.* ¶ 24.  The complex was constructed during World War II as an Army ammunition plant, and in 1966, the General Services Administration ("GSA") took ownership of the complex.  *Id.*  The GSA converted the buildings into an office park, which has been used primarily by the United States Department of Agriculture ("USDA") and the Veterans Benefits Administration.  *Id.*

Plaintiffs allege that since at least 2002, the GSA has been aware of environmental contamination at the Goodfellow Complex caused by various toxic chemicals but has failed to take adequate responsive action.  *Id.*  In 1988, the Environmental Protection Agency added the Goodfellow Complex to its Hazardous Waste Compliance Docket, which identifies facilities affected by hazardous waste.  *Id.*  From 2002 to 2016, the GSA's Public Building Service ("PBS") conducted 33 studies investigating the presence of hazardous materials at the Goodfellow Complex.  *Id.* ¶ 26.  The investigations found asbestos in the air at levels above the Occupational Safety and Health Administration's ("OSHA") 8-hour time weighted average in buildings 122B and 110.  *Id.* ¶¶ 47, 52.  They detected asbestos in the floor tiles of the childcare center and other asbestos-containing materials in building 141C.  *Id.* ¶ 47.  And friable asbestos was found in the basement/basement crawlspace soil of buildings 102E, 103, 103D, 103E, 103F, 104, 104E, 105, 105E, and 105F.  *Id.*  The studies further found that mercury, lead, arsenic, copper, silver, polynuclear aromatic hydrocarbons, and other hazardous materials were present in several office

buildings at the complex. *Id.* ¶¶ 44–48, 50–51. In 2016, OSHA conducted an investigation that further confirmed the existence of toxic materials. *Id.* ¶ 25.

Although many of the contaminants were discovered in spaces not regularly visited by office workers, such as crawl spaces, basements, storage rooms, and electrical substations, Plaintiffs allege that such contaminants could reach the internal building environment through sump pumps, HVAC systems, stairwells, and elevator shafts. *Id.* ¶¶ 55–56. Furthermore, Plaintiffs claim that contaminants were likely spread through construction projects and renovations. *Id.* ¶ 57. Accordingly, Plaintiffs allege that they and other workers at the Goodfellow Complex came into contact with contaminants: (1) "through inhalation of airborne contaminants released from soils . . . , in surface dust, from groundwater . . . , and asbestos fibers"; (2) "through inhalation of contaminants attached to particulates"; (3) "through ingestion of contaminated soils, surface dust, or particulates including asbestos fibers through hand-to-mouth activity"; and/or (4) "through dermal exposure to contaminated soils, surface dust, and groundwater circulated from utility tunnels, in sumps, crawlspaces, or basements throughout the building." *Id.* ¶ 58.

In March 2019, the GSA's Inspector General issued a report concluding that the PBS failed to adequately protect workers and visitors at the Goodfellow Complex from the known environmental hazards. *Id.* ¶ 26. The GSA report was not shared directly with the workers at the Goodfellow Complex but was leaked to Plaintiffs by a GSA employee. *Id.* ¶¶ 7, 27. In response, leadership at the complex denied that any risk of exposure to hazardous materials existed. *Id.* ¶ 27. On November 5, 2021, the United States Office of Special Counsel ("OSC") released the results of a whistleblower investigation which "substantiated serious allegations of widespread environmental contamination at Goodfellow and acknowledged years of exposure by individuals to hazardous materials." *Id.* ¶ 28. The OSC also concluded that "Goodfellow officials were aware

of these conditions but downplayed the risk to employees, tenants, and contractors, and discounted expert guidance and advice, rather than take appropriate corrective action." *Id.*

Plaintiff Medder was employed as a Risk Management Specialist at the USDA from 2003 until 2020 and began working at the Goodfellow Complex in 2008, when the USDA relocated to the compound.[1]  *Id.* ¶¶ 20, 29.  Plaintiffs worked primarily in building 105, but USDA employees additionally held meetings in building 104, had access to the entire complex, and frequented the cafeteria, snack shop, and daycare center.  *Id.* ¶ 30.  In 2016, after eight years of working at the Goodfellow Complex, Medder was diagnosed with internal melanoma.  *Id.* ¶ 31.  According to Plaintiffs, a "significant number of workers at the Complex" have been diagnosed with cancer and other diseases and have struggled with persistent migraines, nose bleeds, and skin rashes.  *Id.* ¶¶ 31, 60.

## II.     Statutory and Regulatory Framework

### A.     Hazardous Duty Pay

Plaintiffs allege that they and members of the putative class are entitled to hazardous duty pay on account of their exposure to asbestos and other toxic chemicals while working at the Goodfellow Complex.  *Id.* ¶ 101.  In 1966, Congress amended the Classification Act of 1949 to allow salaried civilian employees to receive hazardous duty pay.  *Adair v. United States*, 497 F.3d 1244, 1254 (Fed. Cir. 2007).  The Act provides "additional remuneration to the employee asked to take unusual risks not normally associated with his occupation and for which added compensation is not otherwise provided."  *Id.* (quoting H.R. REP. NO. 89-31 (1965)).  Federal employees qualify for hazardous duty pay when they are assigned and perform a "duty involving unusual physical

---

[1]  The Amended Complaint contains no individual allegations specifically addressing Plaintiffs Burrow and Edwards but from the facts pled the Court infers that they too worked at the complex as USDA employees.

hardship or hazard," unless the employee's position "takes into account the degree of physical hardship or hazard involved in the performance of the duties thereof . . . ."  5 U.S.C. § 5545(d)–(d)(1).

Congress directed the Office of Personnel Management ("OPM") to "establish a schedule or schedules of pay differentials" for hazardous duty pay, which "shall be determined by applying occupational safety and health standards consistent with the permissible exposure limit promulgated by the Secretary of Labor under the Occupational Safety and Health Act of 1970." *Id.* § 5545(d).  Pursuant to its statutory delegation, OPM promulgated a Pay Differential Schedule, which outlines dozens of duties that qualify for hazardous duty pay.  *See* 5 C.F.R., pt. 550, subpt. I, app. A (2023).  Relevant here, the schedule entitles employees to hazardous duty pay if they "work with or in close proximity to . . . [t]oxic chemical materials when there is a possibility of leakage or spillage" or to asbestos when there is a "[s]ignificant risk of exposure to airborne concentrations of asbestos fibers in excess of the permissible exposure limits . . . [and] the risk of exposure is directly connected with the performance of assigned duties."  *Id.*  Employees exposed to toxic chemical materials are afforded a 25% pay differential, and employees exposed to asbestos are afforded an 8% pay differential.  *Id.*

Thus, to demonstrate entitlement to hazardous duty pay for work with or in close proximity to toxic chemicals, an employee must show: (1) he was assigned and performed a duty with or in close proximity to toxic chemicals; (2) there was a possibility of leakage or spillage of the chemicals; and (3) the employee's job classifications do not take into account work with or in close proximity to toxic chemicals.  *Id.*; *see* 5 U.S.C. § 5545(d).  To demonstrate entitlement to hazardous duty pay for work with or in close proximity to asbestos, an employee must show: (1) he was assigned and performed a duty with or in close proximity to asbestos; (2) there was a

significant risk of exposure to airborne concentrations of asbestos fibers; and (3) the exposure was in excess of the permissible exposure limits in the standard for asbestos provided in title 29 C.F.R. §§ 1910.1001 or 1926.58; (4) the exposure was directly connected with the performance of assigned duties; and (5) the employee's job classifications do not take into account work with or in close proximity to asbestos.  5 C.F.R., pt. 550, subpt. I, app. A; *see* 5 U.S.C. § 5545(d).

**B.    Environmental Differential Pay**

Plaintiffs also allege that they and members of the putative class are entitled to environmental differential pay on account of their exposure to asbestos and other toxic chemicals while working at the Goodfellow Complex.  ECF No. 8 ¶ 112.  Whereas hazardous duty pay is available for qualifying salaried employees, environmental differential pay is reserved for waged employees whose "duty involve[s] unusually severe working conditions or unusually severe hazards, and for any hardship or hazard related to asbestos . . . ." 5 U.S.C. § 5343(c)(4).  Like with hazard duty pay, Congress directed OPM to set the proper schedules for environmental differential pay.  *Id.*

In accordance with Congress's direction, OPM promulgated a Schedule of Environmental Differential Pay, which outlines dozens of duties that qualify employees for environmental differential pay.  *See* 5 C.F.R., pt. 532, subpt. E, app. A (2023).  Relevant here, the schedule entitles employees to an 8% environmental pay differential for "high degree hazard[s]" associated with toxic chemicals, which means:

> [w]orking with or in close proximity to poisons (toxic chemicals) . . . which involves potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life including exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes required to perform work assignments wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personal injury.

6

*Id.* Examples of such duties include "[h]andling and storing toxic chemical agents," "[t]ransferring chemical agents between containers," and "[s]alvaging and disposing of chemical agents[.]"  *Id.* The schedule entitles employees to a 4% pay differential for "low egress hazard[s]" associated with toxic chemicals, which means:

> [w]orking with or in close proximity to . . . toxic chemicals . . . in situations for which the nature of the work does not require the individual to be in as direct contact with, or exposure to, the more toxic agents as in the case with the work described under high hazard for this class of hazardous agents and wherein protective devices and/or safety measures have not practically eliminated the potential for personal injury.

*Id.* Examples include "[h]andling for shipping, marking, labeling, hauling and storing loaded containers of toxic chemical agents that have been monitored."  *Id.*  Finally, the schedule entitles employees to an 8% pay differential for "[w]orking in an area where airborne concentrations of asbestos fibers may expose employees to potential illness or injury."  *Id.*  The precise pay differential is determined by applying the OSHA permissible exposure limit as published in 29 C.F.R. §§ 1910.1001 or 1926.1101.  *Id.*

Thus, to demonstrate entitlement to environmental differential pay for low degree hazards associated with toxic chemicals, an employee must show: (1) he worked with or in close proximity to toxic chemicals during the performance of assigned duties; and (2) protective devices and/or safety measures did not practically eliminate the potential for personal injury.  *Id.*  To demonstrate entitlement to the higher differential pay for high degree hazards associated with toxic chemicals, an employee must additionally show that the work involved potential serious personal injury.  *Id.* And to demonstrate entitlement to differential pay for exposure to asbestos, an employee must show: (1) he worked in an area where airborne asbestos fibers may have exposed employees to potential illness or injury; and (2) the asbestos concentrations exceeded the permissible exposure limit outlined in 29 C.F.R. §§ 1910.1001 or 1926.1101.  *Id.*

### C.    Fair Labor Standards Act ("FLSA") Overtime Pay

Plaintiffs contend that, by failing to include hazard duty pay and/or environmental duty pay differentials, the Government improperly calculated their and the putative class's overtime pay in violation of the FLSA.  ECF No. 8 ¶ 118.  "Under the FLSA, an agency must compensate its overtime-eligible employees 'for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay,' subject to certain exceptions . . . ."  *Alamo v. United States*, 850 F.3d 1349, 1351 (Fed. Cir. 2017) (citing 5 C.F.R. § 551.501(a); 29 U.S.C. § 207(a)(1)).  "An employee's 'hourly regular rate' is computed by dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid."  5 C.F.R. § 551.511(a) (2023).  An employee's "total remuneration" includes hazardous duty and environmental differential pay.  *Id.* § 551.511(b).

### III.    Procedural History

Plaintiff Medder filed his Complaint on December 22, 2021 ("Original Complaint").  *See* Pl.'s Compl., ECF No. 1.  After the Government moved to dismiss, Plaintiffs filed an Amended Complaint on March 15, 2022, adding Plaintiffs Burrow and Edwards.  *See* ECF No. 8.  Under Count I of the Amended Complaint, Plaintiffs allege entitlement to hazardous duty pay for exposure to toxic chemicals and asbestos at the Goodfellow Complex.  *Id.* ¶ 99.  Under Count II, Plaintiffs allege entitlement to environmental differential pay for exposure to toxic chemicals and asbestos.  *Id.* ¶ 111.  And under Count III, as derivative of the pay differential claims, Plaintiffs contend that they also are entitled to FLSA overtime pay.  *Id.* ¶ 118.  The Amended Complaint seeks an award of monetary damages, as well as the certification of a class (for pay differential claims) and collective action (for FLSA overtime claims) of federal employees who worked at the

Goodfellow Complex within six years prior to the filing of the Complaint, plus additional periods for equitable tolling and/or fraudulent concealment. *Id.* ¶¶ 75, 84; *id.* at 30–31 ("Prayer for Relief").

On May 16, 2022, the Government moved to dismiss the Amended Complaint pursuant to RCFC 12(b)(1) and 12(b)(6). *See* Def.'s Mot. to Dismiss Am. Compl., ECF No. 10. The Government contends that Plaintiffs fail to state a claim under Counts I through III because they fail to allege they were sufficiently exposed to toxic chemicals or asbestos to qualify for hazardous duty or environmental differential pay. *Id.* at 26. The Government further contends that equitable tolling does not apply to extend the limitations period for Plaintiffs' claims and that a class action and collective action are unwarranted. *Id.* at 24, 42–43.

On the same day the Government filed its motion, Plaintiffs filed a Motion to Conditionally Certify a Collective Action ("Motion for Conditional Certification"). *See* Pls.' Mot. for Conditional Certification, ECF No. 11. On June 27, 2022, the Court granted the Government's Motion to Stay Briefing on Plaintiffs' Motion for Conditional Certification pending a ruling on the instant motion. *See* Order, ECF No. 15. On July 13, 2022, Plaintiffs filed a Response to the Government's Motion to Dismiss. *See* Pls.' Resp. to Def.'s Mot. to Dismiss, ECF No. 16. The Government filed its reply on July 27, 2022. *See* Def.'s Reply, ECF No. 17. The Court heard oral argument on February 28, 2023.

## LEGAL STANDARDS

### I.    Motions to Dismiss Pursuant to RCFC 12(b)(1)

Before reaching the merits of a plaintiff's action, the Court must as a threshold matter assure itself that subject-matter jurisdiction exists. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (affirming that subject-matter jurisdiction "'spring[s] from the nature and

limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield v. Swan*, 111 U.S. 379, 382 (1884))).  If a claim is beyond the Court's limited jurisdiction, it must be dismissed.  RCFC 12(b)(1), (h)(3).  The plaintiff bears the burden of establishing by the preponderance of evidence the Court's jurisdiction over its claim.  *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

When deciding whether to dismiss a complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, the Court must accept all factual allegations as true and draw all reasonable inferences in the claimant's favor.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, if a complaint contains challenged factual allegations, for purposes of ruling on a motion to dismiss, the court may inquire into facts necessary to support jurisdiction and may resolve disputed facts.  *See Al Johnson Constr. Co. v. United States*, 19 Cl. Ct. 732, 733 (1990); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (affirming that a court may consider "evidentiary matters outside the pleadings" when assessing dismissal under Rule 12(b)(1)).

## II.    Motions to Dismiss Pursuant to RCFC 12(b)(6)

The Court must also dismiss an action if it fails to state a claim for which relief may be granted.  RCFC 12(b)(6).  To avoid dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a complaint need not contain detailed factual allegations to raise a plausible claim, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss [for failure to state a

claim] we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").  In deciding a motion under RCFC 12(b)(6), the Court may consider the complaint itself, "the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 114 (2010) (quoting *Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 322 (2007)), *aff'd*, 656 F.3d 1306 (Fed. Cir. 2011).

## DISCUSSION

### I.   Plaintiffs Fail to State a Claim for Hazardous Duty Pay or Environmental Differential Pay for Exposure to Toxic Chemicals Other Than Asbestos.

The Government argues that Plaintiffs do not sufficiently allege that they "work[ed] with or in close proximity to" toxic chemicals to state a claim for hazardous duty pay or environmental differential pay pursuant to the relevant regulations.  ECF No. 10 at 26 (quoting 5 C.F.R., pt. 550, subpt. I, app. A; 5 C.F.R., pt. 532, subpt. E, app. A).  Relying on the Federal Circuit's decision in *Adair*, the Government argues that hazardous duty pay and environmental differential pay are available only in "scenarios where the [plaintiff's] job assignment requires directly or indirectly working *with* toxic chemicals or containers that hold toxic chemicals as part of a job assignment." *Id.* at 27 (emphasis in original) (quoting *Adair*, 497 F.3d at 1258).  The Government contends that, because Plaintiffs alleged only that they were *exposed* to toxic chemicals and failed to allege that they *worked with* the chemicals as part of a job assignment, they have failed to state a claim for hazardous duty or environmental differential pay.  *Id.*

After briefing on the Government's Motion concluded, the Federal Circuit confirmed that the language "[work] with or in close proximity to" as used in the regulations at issue "requires working directly or indirectly *with* [the relevant materials] *themselves*."  *Adams v. United States*,

59 F.4th 1349, 1358 (Fed. Cir. 2023), *petition for cert. filed*, (U.S. May 16, 2023) (No. 22-1118) (emphasis in original).   At oral argument, Plaintiffs conceded that their claims premised on exposure to toxic chemicals could not survive a motion to dismiss pursuant to the Federal Circuit's decision in *Adams*.   The Court agrees and concludes that Plaintiffs' claims premised on exposure to toxic chemicals other than asbestos must be dismissed, as Plaintiffs do not allege in the Amended Complaint that they worked with toxic chemicals as part of a job assignment.

## II.     Plaintiffs Have Sufficiently Stated Claims for Hazardous Duty or Environmental Differential Pay for Exposure to Asbestos.

Along with a host of toxic chemicals, Plaintiffs also allege they were exposed to asbestos. In *Adams*, the Federal Circuit specifically distinguished claims premised on exposure to toxic chemicals with those based on exposure to asbestos.   The Court noted that the regulations' asbestos categories "include[] express language covering '[s]ignificant risk of exposure to airborne concentrations of asbestos fibers in excess of the permissible exposure limits . . . .'" *Id.* at 1360 (quoting 5 C.F.R., pt. 550, subpt. I, app. A) (citing 5 C.F.R., pt. 532, subpt. E, app. A).   Juxtaposing the regulations' provisions for toxic chemicals and asbestos, the Court explained that "for employees who are required to do their work in an environment with a hazardous, airborne concentration level of asbestos fibers, OPM specifically created a category to compensate employees who bear the risk of performing assigned duties in such a hazardous environment, including employees who did not work with the asbestos material itself." *Id.* ("As evident by OPM's inclusion of language covering general, ambient exposure in the Tropical Jungle Duty and Asbestos categories, OPM knows how to distinguish categories involving ambient exposure to hazardous materials from categories involving exposure to the hazardous materials themselves resulting from work with those materials (e.g., toxic chemicals, unstable explosives, virulent biologicals, etc.).").   Therefore, while a plaintiff must plead that he worked *with* toxic chemicals

to state a claim for hazardous duty or environmental differential pay, *id.* at 1361, as a threshold matter, he need only plead that he was *exposed to* asbestos to survive a motion to dismiss.

Alleging exposure alone, however, is not sufficient to state a claim. The Government argues that Plaintiffs have failed to allege that they were exposed to airborne asbestos "in excess of the permissible exposure limits." ECF No. 10 at 30 (quoting 5 C.F.R., pt. 550, subpt. I, app. A) (citing 5 C.F.R., pt. 532, subpt. E, app. A). Indeed, an employee is not entitled to hazardous duty or environmental differential pay for just *any* level of exposure to asbestos. *O'Neall v. United States*, 797 F.2d 1576, 1581 (Fed. Cir. 1986). Rather, an employee must demonstrate a significant risk of exposure to airborne asbestos at levels "in excess of the permissible exposure limits (PELS) in the standard for asbestos provided in title 29, Code of Federal Regulations, §§ 1910.1001 or 1926.58 . . . ." 5 C.F.R., pt. 550, subpt. I, app. A; *see* 5 C.F.R., pt. 532, subpt. E, app. A ("[The environmental] differential will be determined by applying occupational safety and health standards consistent with the permissible exposure limit promulgated by the Secretary of Labor under the Occupational Safety and Health Act of 1970 as published in title 29, Code of Federal Regulations, §§ 1910.1001 or 1926.1101.").

Plaintiffs generally allege that, "[i]n performing their job duties at the Goodfellow Complex, [they] were exposed to . . . asbestos in excess of permissible exposure limits." ECF No. 8 ¶ 53. In support of that allegation, the Amended Complaint states numerous facts drawn from various government investigations and reports. For example, Plaintiffs allege that airborne asbestos was detected at levels above the permissible exposure limits in buildings 110 and 122B at the complex. ECF No. 8 ¶¶ 47, 52. Plaintiffs do not allege, however, that they worked in those buildings. Instead, Plaintiffs state that USDA employees worked primarily in building 105 and held meetings in building 104. *Id.* ¶ 30. They also claim to have frequented the cafeteria, snack

shop, and day care center, *id.*, but do not allege that they performed any work functions at those locations.  While they do not explicitly allege the existence of airborne asbestos above permissible exposure limits in the two buildings where they worked—buildings 104 and 105—Plaintiffs claim that friable asbestos was detected in the basement/basement crawlspace soil under those buildings. *Id.* ¶¶ 47, 49, 54.  They also allege that friable asbestos was found in several other buildings throughout the complex.  *Id.* ¶¶ 46–47, 49, 54.  The scope of the contamination may not be fully known, as "'[m]ultiple facility spaces that contain air/soil/water/surface contamination have not been properly evaluated to determine the amount/toxicity/extent of the hazards involved.'"  *Id.* ¶ 53 (quoting GSA's November 9, 2020, response to OSC).

Plaintiffs contend that friable asbestos is of "particular concern" because "[f]riable asbestos laden soil/dust is easily disturbed and can become airborne and remain airborne for several days before settling back out into the dirt."  *Id.* ¶ 59.  To that point, the Amended Complaint alleges that construction and maintenance projects in or near workspaces at the complex were "frequent and performed without any protective barriers in place."  *Id.* ¶ 30; *see id.* ¶ 57 (describing finding of 2014 GSA Survey related to review of major renovation projects).  Plaintiffs also describe alternative means in which friable asbestos can allegedly become airborne, including through HVAC and air handling equipment, stairwells, and elevators.  *Id.* ¶ 56.  They allege reports of "nauseating odors circulating through the buildings."  *Id.*  And they reportedly "experienced frequent and pervasive physical discomfort and distress in performing their job duties at Goodfellow."  *Id.* ¶ 60.  In 2020, the United States Department of Health and Human Services reportedly stated that past exposure to contaminants at the complex, including asbestos, "could have caused or may cause in the future adverse health effects" for those working in the facility.

*Id.*  As noted above, Plaintiff Medder—who worked for USDA in building 105—alleges he has been diagnosed with cancer.  *Id.* ¶ 31.

Although the issue presents a close call, these allegations are sufficient to state a viable claim for relief, at least at the initial motion to dismiss stage.  To state a claim for relief in this Court, a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief . . . ."  RCFC 8(a)(2).  Therefore, to avoid dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

Accepting as true, as the Court must, that airborne asbestos was found above permissible limits in at least two buildings at the Goodfellow Complex, that friable asbestos was discovered in the buildings at which Plaintiffs worked, that friable asbestos can easily be disturbed, that construction activities occurred without protective barriers at the complex that could cause the friable asbestos to become airborne, and that Plaintiffs experienced physical discomfort while performing their duties, the Amended Complaint sufficiently alleges facts supporting a hazard duty pay or environmental differential pay claim.  These factual allegations, assessed in the context of the numerous government findings about contamination issues at the complex as described in the Amended Complaint, raise "the reasonable inference" that Plaintiffs faced a significant risk of exposure above permissible levels while performing their assigned duties as federal employees at

the Goodfellow Complex.  *Id.*[2]

The Government argues that Plaintiffs' allegations are speculative and highlights that—unlike the two other buildings at the complex (122B and 110)—Plaintiffs do not allege that testing of buildings 104 or 105 detected airborne asbestos at all, let alone in excess of permissible limits. ECF No. 10 at 29.  On the face of the Amended Complaint, the Court cannot determine that such air testing was done and, if it was, whether it supports or undermines Plaintiffs' claims.  *See* ECF No. 8 ¶ 53 (noting that multiple facility spaces had not been properly tested).  But in any event, the standard applied by the Government—which would essentially require Plaintiffs to plead with specificity the airborne asbestos level in a given environment—is incongruous with the federal pleading standard.  Pleadings in this Court are held only to a "plausibility standard," which "asks for more than a sheer possibility that a defendant has acted unlawfully," but "is not akin to a 'probability requirement.'"  *Iqbal*, 556 U.S. at 678.  Here, the Amended Complaint pleads sufficient factual allegations that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545; *see CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019) ("Plaintiffs need only 'nudge their claims across the line from conceivable to plausible.'").  Nothing more is required at this threshold stage.

The Government relies on *Howarth v. United States*, 41 Fed. Cl. 160, 165 (1998), to support its contention that "plaintiffs' allegations that asbestos has been detected throughout the

---

[2] The Government also argues that Plaintiffs have not detailed any specific job duties performed that would have exposed them to airborne asbestos.  ECF No. 10 at 31.  But Plaintiffs have pled that they performed assigned work functions in buildings 104 and 105 as USDA employees and, specifically, that Plaintiff Medder worked as a Risk Management Specialist (*i.e.*, an office worker).  *See* ECF No. 8 ¶¶ 2, 20, 30.  Since entitlement to the pay differentials is premised on ambient exposure (not "work with the asbestos material itself"), *Adams*, 59 F.4th at 1360, Plaintiffs' allegations are sufficient to state a plausible claim.  A more granular explanation of their day-to-day work duties is not necessary.

complex is not enough." ECF No. 17 at 4. In *Howarth*, the plaintiffs and the Government cross-moved for summary judgment on the plaintiffs' environmental differential pay claims. 41 Fed. Cl. at 161–62. The plaintiffs' findings of uncontroverted facts merely alleged that their workplace was "full of asbestos." *Id.* at 165. The Court held that the plaintiffs did not meet their burden of proof, as such evidence was "inadequate to establish plaintiffs' actual personal exposure to unusually severe levels of airborne asbestos." *Id.* at 165–66. Accordingly, the court granted judgment in the Government's favor. *Id.* at 167–68.

*Howarth*, however, is inapposite to the issue at hand since it was decided on summary judgment.[3] To be sure, if the facts in this case do not show at the merits stage that Plaintiffs faced a serious risk of exposure to airborne asbestos at levels above the permissible exposure limits while performing their assigned duties at the Goodfellow Complex, then judgment in favor of the Government would similarly be appropriate. At this early stage of the proceedings, however, the Court must accept all of Plaintiffs' allegations as true under a plausibility standard. As explained, Plaintiffs have met the threshold pleading standard, and thus their claims premised on asbestos exposure survive dismissal under RCFC 12(b)(6).

### III.   Plaintiffs Have Sufficiently Stated Claims Under the FLSA.

The Government argues that because Plaintiffs' FLSA claim in Count III "is dependent upon the viability" of the hazardous duty and environmental differential pay claims pled in Counts

---

[3] Likewise, the Government relies on *O'Neall v. United States*, 797 F.2d 1576 (Fed. Cir. 1986), and *Carr v. United States*, 61 Fed. Cl. 326 (2004). ECF No. 10 at 30. Neither of these cases address the requirements for pleading a hazardous duty or environmental differential pay claim based on asbestos exposure. *See O'Neall*, 797 F.2d at 1578 (reviewing trial court's interlocutory rulings on the level of asbestos exposure necessary to establish entitlement and on which party bears the burden of proof); *Carr*, 61 Fed. Cl. at 330 (converting the Government's motion to dismiss, which included proposed findings of uncontroverted fact, to a motion for summary judgment).

I and II, Count III also should be dismissed for failure to state a claim.  ECF No. 10 at 32.  For the reasons explained above, Plaintiffs sufficiently pled claims in Counts I and II premised on asbestos exposure, and since the FLSA claim is derivative, it survives dismissal under RCFC 12(b)(6) as well.

### IV.    Partial Dismissal of Plaintiffs' Claims as Untimely is Premature.

Plaintiffs' hazardous duty and environmental differential pay claims are subject to the Court's six-year statute of limitations, 28 U.S.C. § 2501, while their FLSA claim is subject to a two-year limitations period (three years if the violation is willful), 29 U.S.C. § 255(a).  Although the Original Complaint was filed in 2021, Plaintiffs allege that the Goodfellow Complex was contaminated with asbestos since at least 2002.  ECF No. 8 ¶ 24.  Plaintiffs argue that, because the Government fraudulently concealed and misrepresented the extent of contamination at the Goodfellow Complex and the risks of exposure to employees, the statutes of limitations should be tolled such that Plaintiffs may recover for "each instance that [they were] denied proper wages . . . ."  *Id.* ¶ 64; *see id.* ¶ 69.  The Government argues that equitable tolling is inapplicable to the relevant statutes of limitations, and regardless, Plaintiffs' allegations have not proven the Government fraudulently concealed its alleged wrongdoing.  ECF No. 10 at 33, 35, 37–38.  Accordingly, the Government requests the Court dismiss all claims predating the applicable statutes of limitations.  *Id.* at 41.

### A.    Plaintiffs Have Pled Facts Demonstrating at this Early Stage that Their Hazardous Duty and Environmental Differential Pay Claims Accrued Within the Limitations Period.

A party must file a claim for hazardous duty or environmental differential pay "within six years after such claim first accrues."  28 U.S.C. § 2501.  The Federal Circuit has held that for purposes of § 2501, "a cause of action against the government has first accrued only when all the

events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis in original) (internal quotation marks omitted). Accordingly, the accrual of a plaintiff's claim may be suspended if the plaintiff demonstrates that the Government "has concealed its acts with the result that [the] plaintiff was unaware of their existence" or that "its injury was 'inherently unknowable' at the accrual date." *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)).  While the parties refer to this rule as "tolling" the statute of limitations, it is more properly understood as delaying the accrual of a plaintiff's claim.  *Id.* ("[The] legal rule . . . is based on a construction of the term 'accrues' in section 2501.  That rule is distinct from the question whether equitable tolling is available under that statute, although the term 'tolling' is sometimes used in describing the rule."); *Hopland*, 855 F.2d at 1578.  Because the Court's six-year statute of limitations limits the scope of the Government's waiver of sovereign immunity, it is a jurisdictional requirement that cannot be waived and is not susceptible to equitable tolling. *Hopland*, 855 F.2d at 1576–77; *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008).

Plaintiffs allege that officials at the Goodfellow Complex were aware of asbestos contamination since at least 2002, a fact they claim is confirmed through the November 2021 OSC letter and report.  ECF No. 8 ¶¶ 10, 24.  Despite their knowledge, the officials allegedly "failed to appropriately notify employees or tenant agencies and deliberately misled tenants about the well-documented health risks."  *Id.* ¶ 10.  Plaintiffs claim that they themselves did not become aware of asbestos contamination until 2019 after the GSA Inspector General issued his report in March of that year.  *Id.* ¶ 7.  But even then, the officials' response allegedly downplayed and

misrepresented the scope of the contamination and risk to employees.  *Id.* ¶ 9.  As such, Plaintiffs argue that their injury was inherently unknowable until November 5, 2021, when the OSC issued its letter and report.  ECF No. 16 at 27.

The Government largely accepts Plaintiffs' timeline of events but argues that Plaintiffs could have been aware of environmental contamination as early as 2015.  ECF No. 10 at 40.  In support of this contention, it references the GSA Inspector General's March 15, 2019, report.  *Id.* That report reveals that after the issuance of an OSHA notice in July 2016, the PBS began to take corrective action regarding the environmental contamination at the Goodfellow Complex.  U.S. Gen. Servs. Admin. Off. Of Inspector Gen., *Audit of Env't Issues at the Goodfellow Complex in St. Louis, Mo.*, Report No. 170027/P/6/R19002 at 2 (March 15, 2019).  "These actions included informing tenants of the hazards, limiting access to some spaces, installing warning signs, and establishing a public electronic reading room for the various studies of the complex."  *Id.*  The Government contends these actions occurred in 2015 and would have notified a diligent plaintiff of potential claims resulting from exposure to contaminants; however, contrary to the Government's assertions, the report reveals that the PBS in fact undertook the corrective actions between July 2016 and August 2018.[4]  *Id.*  ("In July 2016, OSHA issued a notice of unsafe working conditions at the Goodfellow complex . . . .  After receiving the OSHA notification, PBS took corrective action to address the citations.").  Plaintiffs do not directly address the 2016 corrective actions.  Instead, citing a conclusion in the 2021 OSC letter and report, they emphasize that, notwithstanding various investigations, communications in 2016 from Goodfellow Complex "officials . . . regarding the contamination were 'overtly misleading' and part of a 'pattern of

---

[4] In a different statement, the report states that the PBS installed "signs warning of the presence of these contaminants [in] late 2015."  Report No. 170027/P/6/R19002 at 6.

suppressing or downplaying risks.'"  ECF No. 16 at 27 (quoting ECF No. 8 ¶ 28) (emphasis omitted).

Even accepting the Government's argument, it does not contend that Plaintiffs were or should have been aware of the existence of the facts underlying their causes of action any earlier than late 2015 or 2016 (precise dates were not alleged).  In that case, Plaintiffs' claims would have first accrued for purposes of § 2501 at that time and were thus likely timely filed within the six-year limitations period—*i.e.*, in late December 2021 for Plaintiff Medder, and March 2022 for Plaintiffs Burrow and Edwards.

Moreover, as noted above, Plaintiffs have pleaded more than mere allegations that the Government, through inaction or silence, failed to disclose facts material to the existence of their claims.  *See* ECF No. 10 at 40 (citing *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1143 (Fed. Cir. 1996) ("a mere failure to come forward with facts that would provide the plaintiff with a basis for suit does not constitute fraudulent concealment")); *see also Carr*, 61 Fed. Cl. at 331 (holding the plaintiffs did not demonstrate an alleged "pattern and practice of secrecy and misinformation" by the Government regarding asbestos exposure at an Army installation).  Here, among other allegations, Plaintiffs have pointed to findings from government investigations that conclude officials made inaccurate or misleading statements about environmental contamination at the complex.  *See* ECF No. 8 ¶ 28 (quoting OSC findings); *see also id.* ¶ 27 ("The response from Goodfellow leadership [to the March 2019 GSA Inspector General report] was to deny the presence[] of contamination in the work areas, along [with] any risk of exposure to the workers or potential health impacts therefrom."); ¶ 72 ("Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding its illegal conduct, and actively have foreclosed Plaintiffs and the Classes from learning of their illegal, unfair, and/or

deceptive acts.").  Further factual development will be necessary to determine (a) the exact nature of the communications made by government officials and whether they demonstrate acts of concealment that would further suspend the accrual of Plaintiffs' claims, (b) the precise nature and timing of the corrective actions in 2015 and 2016, and (c) whether Plaintiffs were or should have been aware of the existence of their claims earlier than six years before they filed suit.  *See Ingrum v. United States*, 77 Fed. Cl. 248, 251 (2007) (denying motion to dismiss pending further development of record regarding when plaintiff should have been aware of existence of claim).

Ultimately, it will be Plaintiffs' burden to prove (not simply plead) its claims are within the bounds of the Court's jurisdiction, and the Court's ruling is without prejudice to the parties raising the issue again with more specific evidence bearing on the question of the accrual date of Plaintiffs' hazardous duty and environmental differential pay claims.  *See Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*.").

### B.  Equitable Tolling May Apply to FLSA Claims Against the Government.

Unlike claims for hazardous duty or environmental differential pay, which are subject to the Court's general six-year statute of limitations, FLSA claims based on non-willful violations of the Act are subject to a statute-specific two-year limitations period.  29 U.S.C. § 255(a).  Because the Act provides its own statute of limitations, the Court applies the FLSA's limitations period rather than the six-year limitations period in § 2501.  *See Ewer v. United States*, 63 Fed. Cl. 396, 399 (2005) (collecting cases).  Under "the usual rule, . . . a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid."  *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988) (citing *Beebe v. United States*, 640 F.2d 1283 (Ct. Cl. 1981)).  Although the statute of limitations would thus bar Plaintiffs from bringing claims related to pay periods more

than two years before they filed suit, Plaintiffs argue that the statute of limitations should be equitably tolled on account of the Government's fraudulent concealment.  ECF No. 16 at 27.  The Government argues that no such tolling should be granted because, as a matter of law, equitable tolling is unavailable for FLSA claims against the Government.  ECF No. 10 at 35.

The Federal Circuit has not decided whether the FLSA's statute of limitations may be equitably tolled in suits against the Government.  *See United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (declining to address the issue where the trial court's equitable tolling ruling did not apply to the plaintiffs who appealed).  Nevertheless, "the Supreme Court has established the presumption that equitable tolling is available in suits against the government when permitted in analogous private litigation."  *Kirkendall v. Dep't of Army*, 479 F.3d 830, 836 (Fed. Cir. 2007) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990)).  The presumption is rebuttable, however.  To determine if equitable tolling applies, courts engage in a two-part inquiry.  *Id.* at 837. First, the Court must "determine whether [equitable] tolling is available in a sufficiently analogous private suit."  *Id.*  Second, the Court must look to the factors laid out by the Supreme Court in *United States v. Brockamp*, 519 U.S. 347, 354 (1997), "to determine whether Congress expressed a 'clear intent' that equitable tolling not apply."  *Id.*  Those factors include "the statute's detail, its technical language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter."  *Id.* at 836–37 (quoting *Brice v. Sec'y of Health & Hum. Servs.*, 240 F.3d 1367, 1372 (Fed. Cir. 2001) (citing *Brockamp*, 519 U.S. at 350–52)).  Not every factor must be present to conclude that Congress clearly intended to preclude equitable tolling, and while unlikely, a single factor may be dispositive.  *Id.* at 837.

As to the first step, courts have consistently held that equitable tolling is allowable in FLSA suits against private parties.  *See Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1340 (11th Cir.

2023); *Cruz v. Maypa*, 773 F.3d 138, 146–47 (4th Cir. 2014); *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 (1989).

As to the second step, the Government argues that the presumption of tolling is rebutted because "the [FLSA's] limitations period is stated in an unusually emphatic form." ECF No. 10 at 37. However, the Supreme Court has held that the exact language identified by the Government—"shall be forever barred"—is not emphatic language that weighs against the presumption of equitable tolling. *United States v. Wong*, 575 U.S. 402, 410 (2015) (holding that the Federal Tort Claims Act's statute of limitations is not jurisdictional and may be equitably tolled). The Government next argues that, like in *Brockamp*, the two-year limitations period is repeated twice in FLSA § 255(a). *See* 29 U.S.C. § 255(a) (providing that an FLSA action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued"); *see* ECF No. 10 at 37. Whereas the statute in *Brockamp* described the relevant limitations period in different ways and in different subsections, the FLSA language amounts to a singular description of the limitations period in just one subsection. *Compare* 26 U.S.C. § 6511(a)–(b), *with* 29 U.S.C. § 255(a); *see Brockamp*, 519 U.S. at 351; *see also Christofferson v. United States*, 64 Fed. Cl. 316, 326 (2005) (distinguishing the statute of limitations at issue in *Brockamp* from the FLSA's statute of limitations). Finally, the Government argues that the FLSA's statute of limitations contains an exception, extending the limitations period to three years for willful violations. ECF No. 10 at 37 (quoting 29 U.S.C. § 255(a) ("except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued")). This single carveout, however, is a far cry from the several "very specific exceptions" present in the statute at issue in

*Brockamp*, which "[did] not include 'equitable tolling.'" *Brockamp*, 519 U.S. at 351; *see Hart v. Gov't Emps. Ins. Co.*, 609 F. Supp. 3d 323, 328 (M.D. Pa. 2022) (finding FLSA statute of limitations used fairly simple language, rather than highly technical language that would imply an absence of implicit exceptions).

In sum, the *Brockamp* factors do not rebut the presumption of equitable tolling with respect to the FLSA.[5]  Accordingly, consistent with the weight of authority in the Court of Federal Claims, the Court concludes that the FLSA's statute of limitations is subject to equitable tolling.  *See, e.g.*, *Braswell v. United States*, 155 Fed. Cl. 148, 151 (2021) ("[I]t appears to the Court that the FLSA statute of limitations is not jurisdictional and thus may be tolled."); *Abbey v. United States*, 106 Fed. Cl. 254, 266 (2012) (collecting cases) ("The weight of authority in the United States Court of Federal Claims . . . acknowledges that equitable tolling of the statute of limitations is available in FLSA cases under certain limited circumstances."); *Ewer*, 63 Fed. Cl. at 402 (holding FLSA statute of limitations is subject to equitable tolling); *Hickman v. United States*, 43 Fed. Cl. 424, 427 (1999), *aff'd*, 232 F.3d 906 (Fed. Cir. 2000) (same); *Udvari v. United States*, 28 Fed. Cl. 137, 139 (1993) (same); *but see Doyle v. United States*, 20 Cl. Ct. 495, 599–500 (1990), *aff'd* 931 F.2d 1546 (Fed. Cir. 1991).

The Court next must determine whether Plaintiffs have pled facts that could show equitable tolling should apply to their claims.  To show that equitable tolling is appropriate, the plaintiff bears the burden of establishing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' of timely filing the claim."  *Crawley v. United States*, 157 Fed. Cl. 178, 181 (2021) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

---

[5] The Government's sovereign immunity argument is equally unavailing.  ECF No. 10 at 35; *see Wong*, 575 U.S. at 418 (discussing *Irwin*, 498 U.S. at 97).

This Court has found the existence of an "extraordinary circumstance" justifying equitable tolling when: "(1) a defective pleading was filed during the statutory period; (2) plaintiff was induced or tricked by defendant's misconduct into allowing the filing deadline to pass; or (3) plaintiff's injury was inherently unknowable." *Id.* (citing *Christofferson*, 64 Fed. Cl. at 326; *Irwin*, 498 U.S. at 96). As explained above, Plaintiffs' pleading adequately alleges a plausible claim that either their injuries were inherently unknowable until 2021 and/or the Government's alleged misconduct induced them not to file within the limitations period, and that Plaintiffs timely filed suit after the November 2021 OSC letter and report confirmed both the contamination at the Goodfellow Complex and the Government's misrepresentations. *See supra* § IV.4.A. Accordingly, the allegations in the Amended Complaint are sufficient to avoid dismissal under RCFC 12(b)(6) of the FLSA claims that accrued beyond the limitations period.

At this early stage of proceedings and without further factual development, however, the Court is not making a final ruling on whether the limitations period for Plaintiffs' claims should be equitably tolled. *See Ingrum*, 77 Fed. Cl. at 251. Ultimately, Plaintiffs will bear the burden of bringing forth concrete evidence that demonstrates they diligently pursued their rights and that an extraordinary circumstance prevented them from timely bringing their claims. *See Crawley*, 157 Fed. Cl. at 181.

**V.     Consideration of Class Action and Collective Action Certification Is Premature.**

The Government argues the Court should not certify Plaintiffs' proposed class and collective action because Plaintiffs have not alleged viable claims and because Plaintiffs have not met the qualifications for class action or collective action certification. ECF No. 10 at 41–43. Plaintiffs, however, have separately filed a Motion for Conditional Certification, and the Court granted the Government's request to stay briefing on the motion pending the resolution of the

Government's Motion to Dismiss.  *See* ECF No. 15 at 3.  And, to date, Plaintiffs have not moved to certify their proposed pay differential class.  Because the Court concludes that Plaintiffs have pleaded viable claims, and because the Court expressly stayed the question of collective action certification at the Government's request and has no pending class certification motion before it, it would be inappropriate to rule on certification issues at this stage.  *See Long v. CPI Sec. Sys., Inc.*, No. 3:12-CV-396, 2012 WL 3777417, at *5 (W.D.N.C. Aug. 30, 2012) ("Defendant's argument that this Court should dismiss Plaintiff's collective action allegations . . . is inappropriate at this stage in the litigation." (internal quotation marks omitted)); *Hoffman v. Cemex, Inc.*, No. CIV. A. H-09-3144, 2009 WL 4825224, at *4 (S.D. Tex. Dec. 8, 2009) ("[T]he plaintiffs need not plead facts to support the propriety of a collective action to survive a Rule 12(b)(6) motion. Whether proceeding collectively is appropriate will be addressed when the plaintiffs move for conditional certification . . . .").

### VI.   The Claims of Potential Collective Action Members Should Not Be Equitably Tolled Pending a Ruling on the Government's Motion.

In its opposition to the Government's motion to stay briefing on collective action certification pending a ruling on the instant dismissal motion, Plaintiffs alternatively argued that the Court should toll the FLSA statute of limitations for any potential collective action members during the period of the stay.  ECF No. 16 at 30.  Consistent with the Court's instruction, Plaintiffs re-raised that argument in their response to the Government's Motion.  *See* ECF No. 15 at 3; ECF No. 16 at 30.  When a collective action is certified, courts have the authority to facilitate notice of the action to potential plaintiffs.  *Hoffmann-La Roche*, 493 U.S. at 169.  Plaintiffs argue that because such notice is being delayed by the pending stay, "potential opt-in plaintiffs may not learn of the opportunity to join [this] case before their statute of limitations expires, potentially extinguishing claims of absent class members."  ECF No. 16 at 30.

Although it is possible some other workers at the Goodfellow Complex may not become aware of this lawsuit absent notice, "the question is not whether delay in issuing notice prevented potential plaintiffs from learning about this *particular* lawsuit, but whether the delay is preventing them from discovering their *own* claims." *Calloway v. AT & T Corp.*, 419 F. Supp. 3d 1031, 1037 (N.D. Ill. 2019) (emphasis in original). Plaintiffs have not demonstrated how a delay in notice regarding this suit would affect potential collective action members' knowledge of their own claims, nor have they shown the existence of any "extraordinary circumstance" since this suit was filed that has prevented potential collective action members from filing a claim. *Crawley*, 157 Fed. Cl. at 181; *see* Order at 3, *Jones v. United States*, No. 08-645 (Fed. Cl. Apr. 28, 2009), ECF No. 49 ("Our decision to stay class certification does not prevent putative plaintiffs from discovering that they may have a colorable claim for relief, nor does it affect their ability to bring suit on their own . . . . Accordingly, we find that Plaintiffs have not made out a case for equitable tolling . . . ."). Indeed, two plaintiffs—Ms. Burrow and Ms. Edwards—filed consents to join Plaintiffs' putative collection action shortly after the Original Complaint was filed. *See* Notices, ECF Nos. 5–6. And 137 individuals have filed similar consents since the time the Government filed the instant motion. *See* Notices, ECF Nos. 22–26. "Those opt-ins undermine the argument that the delay is preventing others from joining the lawsuit." *Calloway*, 419 F. Supp. 3d at 1037; *see* Order at 3, *Jones*, *supra*.

Plaintiffs cite to *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, No. CV08083PHXMHM, 2008 WL 4446539, at *22 (D. Ariz. Sept. 30, 2008), in support of their position. ECF No. 16 at 32. In that case, the court tolled the statute of limitations for potential FLSA collective action members while the court delayed its decision on collective action certification to decide a motion to dismiss. *Stickle*, 2008 WL 4446539, at *22. The court concluded equitable tolling was

appropriate "in the interest of justice" to prevent the expiration of potential plaintiffs' claims. *Id.* (citing a Ninth Circuit case and an in-circuit district court case relying on Ninth Circuit precedent). The standard applied in this Court, however, requires a plaintiff to demonstrate he was prevented from filing a claim due to an "extraordinary circumstance," *Crawley*, 157 Fed. Cl. at 181 (quoting *Pace*, 544 U.S. at 418), which Plaintiffs have failed to demonstrate here with respect to the pendency of the Government's Motion.  Plaintiffs cite to several other cases in which a stay of proceedings was denied, in part, because a stay would delay notice to potential collective action members.  *See, e.g.*, *Archon v. Taylor & Tyler, Inc.*, No. 18-6854, 2018 WL 5084875 at *3 (E.D. La. Oct. 18, 2018); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2013 WL 2434611, at *3 (E.D. Pa. June 5, 2013); *Brown v. Citicorp Credit Servs., Inc.*, No. 1:12–CV–62–BLW, 2013 WL 1760267, at *3 (D. Idaho Apr. 24, 2013).  But the standard for granting a stay is discretionary and far removed from the "extraordinary circumstance" standard for equitable tolling.  These cases are likewise inapposite to the issues here.

Under the narrow standard for equitable tolling applied in this Court, Plaintiffs have failed to establish the existence of an extraordinary circumstance that would justify equitable tolling during the period of the stay related to its collective action certification motion.  The Court accordingly **DENIES** Plaintiffs' request.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss under RCFC 12(b)(1) and RCFC 12(b)(6) (ECF No. 10) is **GRANTED in part and DENIED in part**.  The Government's earlier filed Motion to Dismiss (ECF No. 7) is **DENIED as moot**.  Plaintiffs' request for equitable tolling of the statute of limitations for potential collective action plaintiffs during the period of briefing and consideration of the Government's Motion to Dismiss is **DENIED**.  The parties shall

submit a joint status report by no later than July 31, 2023, proposing a schedule for further proceedings, including a deadline for the Government's Answer and a schedule for briefing on Plaintiffs' Motion for Conditional Certification (ECF No. 11) or on any amended motion that takes into account the rulings in this Order.

**SO ORDERED**.

Dated: July 17, 2023                                    */s/ Kathryn C. Davis*
                                                        KATHRYN C. DAVIS
                                                        Judge